**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA**

| | | |
|---|---|---|
| Continental Resources, Inc., | ) | |
| | ) | |
| Plaintiff, | ) | **ORDER RE MOTION TO** |
| | ) | **REVISE THE SCHEDULING ORDER** |
| vs. | ) | |
| | ) | |
| Northland Royalty Corporation, | ) | Case No. 1:17-cv-00227 |
| | ) | |
| Defendant. | ) | |

Before the court is a motion to revise the scheduling order in this case. The parties are in agreement on a new schedule except for whether defendant should be allowed a short period of time to amend its pleadings. Defendant states it wants the opportunity bring one or more claims based upon purported breaches by plaintiff of a stipulation the parties entered into to resolve some of the issues in the case.

Plaintiff opposes any attempt to amend the pleadings. Plaintiff contends that any claims for breach of the stipulation are for another case since the purported breaches occurred subsequent to what it argues has been put at issue by the pleadings and allowing new claims will only cause further delay.

The court is concerned, however, that it may not be that simple. The concluding provision of the stipulation provides that either party may ask the court to include any of its terms as part of the final judgment. If the stipulation has in fact been breached, that may raise questions with respect to its enforceability. Further, it raises questions of fairness. That is, whether plaintiff may take advantage in this case of the parts of the stipulation that benefit it and then be heard to say, for other parts that it may have breached, those must be litigated in separate case. Also, depending upon the

1

claimed breach, defendant may be denied the benefit of its bargain if the breach is not dealt with in this case. Finally, it may be more expedient for the parties and the court to resolve any breaches of the stipulation now, even though it may result in some delay.

That being said, the court lacks sufficient information to make a determination one way or the other. In fact, the court is not yet convinced that defendant has a colorable claim for breach of the stipulation. Part of the problem is that the court does not have before it a proposed amended pleading so it can see exactly what the new claims are and, just as importantly, what relief is being sought. In addition, the briefing up to this point has been less than satisfactory in terms of setting forth what really is going on.

Defendant suggests in its briefing that plaintiff has breached the stipulation in at least one and possibly two ways. The first claimed breach relates to plaintiff's agreement to put defendant "in pay status" for the five wells for which the parties were able to agree upon defendant's working and net revenue interests. Defendant contends plaintiff has breached the stipulation by failing to put it in pay status for the five wells, but never clearly explains what it claims putting in pay status means as a practical matter.

In its response, plaintiff contends: (1) defendant has not made a "single payment" of its share expenses for the wells; and (2) it has the right to offset what defendant owes for its share of well expenses against what it is obligated to pay defendant for its share of well revenue. Then, in reply to this, defendant disingenuously states plaintiff's assertion that it has failed to make a "single payment" for well expenses is wrong and points to the payment that it made pursuant to the stipulation for its share of expenses on the wells in question through January 2019. However, defendant says nothing about billings for its share of expenses that may have been sent after January

2019.

So what really is going on here? Has defendant not paid its share of well expenses for the five wells in question after January 2019? Also, what is being offset? Is plaintiff offsetting for each well just defendant's unpaid expenses for that well? Is plaintiff offsetting unpaid expenses for all of the five wells as a group? Or, is plaintiff offsetting unpaid expenses for wells other than the five covered by the stipulation? Finally, does any of this make any difference given what already is at issue in this case?

Let us assume for the moment that: (1) defendant has not been paying its share of the well expenses for the five wells as plaintiff contends; (2) plaintiff has been offsetting what it owes on the five wells the expenses it claims defendant has not been paying; and (3) defendant contends the offsets are not permitted all or in part. What has changed from what already is at issue? As the court reads the complaint and the counterclaim, plaintiff is claiming that defendant has not been paying its share of well expenses and defendant is claiming it is not being paid what is owed on its interests and that plaintiff is making inappropriate offsets.

Unless the court is missing the boat (and it might very well be given the dearth of information), the only argument that defendant has that the stipulation imposed something new would be a contention that plaintiff's agreement to put defendant in pay status for the five wells was an agreement not to make any offsets or at least not offsets for a well other than for the expenses for that well. And, if that is really what defendant is claiming, the court has serious reservations as to whether this is a reasonable construction of the language of the stipulation.

The court also has concerns about what may or may not be an assumption by plaintiff in its briefing. If plaintiff is assuming that any disputes over whether defendant has been properly paid

3

on the production from the five wells since the stipulation was entered into are for another case, that is not how the court construes the pleadings. As the court reads the counterclaim, there is no cutoff in time with respect to defendant's claims that plaintiff owes it money on the wells in question and is entitled to an accounting. Also front and center is the issue of setoffs.

The second claim of possible breach of the stipulation mentioned by defendant relates to plaintiff's promise that it would have a new chain of title run at its expense for the O'Neil well and provide it to defendant. Prior to the instant motion, plaintiff and defendant both represented to the court that, with a new chain of title for the O'Neil well, the parties might very well be able to come to an agreement with respect to the percentages of working and net revenue interests possessed by defendant in that well—similar to what the parties were able to agree upon for the other five wells referenced in the stipulation. In fact, this was the basis for the court granting one or more prior amendments to the scheduling order with plaintiff assuring the court the new chain of title would be forthcoming.

Given this history and the fact the burden on the court would be substantially lessened if the parties were able to come to an agreement with respect to defendant's interests in the O'Neil well, the court very much doubts that plaintiff would renege upon its obligation to provide the chain of title. But, if that is plaintiff's intention, the court would likely take a dim view of it. Without making a final decision now, the court might very conclude that any such breach should be resolved before the case moves forward.[1]

---

[1] It appears the parties' agreement that a new chain of title be run for the O'Neil well was in hope that it might result in a settlement. While the court cannot force a party to settle, one possibility would be to require specific performance of plaintiff's promise to obtain at its expense the new chain of title and order that the parties engage in a court-sponsored settlement effort. Another possibility might be to allow time for defendant to run the title, order the parties to engage in a settlement effort when completed, and allow defendant to recover the costs of running title as damages for the breach of stipulation. The court doubts defendant has a remedy if it is required to adjudicate the breach

In summary, while the court would be concerned if there has been any breaches of the stipulation, it lacks sufficient information to make a decision one way or the other as to whether defendant can amend its pleadings to assert one or more claims of breach. Also, the court is not willing to proceed further in the abstract. Hence, what the court will do now is **GRANT IN PART** and **DENY IN PART** plaintiff's motion at Doc No. 43 and require the following:

1. Counsel for plaintiff and defendant shall within seven (7) business days of this order confer by telephone to discuss what is at issue in this case and what plaintiff's intentions are with respect to the chain of tile with respect to the O'Neil well in light of the court's discussion as set forth above.

2. If defendant believes its concerns have not been adequately addressed, it may on or before May 29, 2020, file a motion to amend its pleadings but limited to its claims for breach of the stipulation. Defendant must submit with its motion the proposed amended pleading. Also, the parties do not have to repeat all of their prior discussion about what the law is with respect to when amendments to pleadings should be permitted.. The court is already aware of the relevant standards and, in any event, the prior briefs will be considered.

3. Plaintiff shall file its response on before June 12, 2020.

4. There shall be no reply. Rather, the court will hold a telephonic conference with the parties shortly after the submission of plaintiff's response to address this matter further as well as what the schedule should be going forward. The court expects the parties during the telephonic conference to be prepared to address: (1) what actually

---

in a separate case and proceeding in one of these two ways would at least give defendant what it bargained for.

is going on in terms of payment or nonpayment of any joint interest billings including the reasons why there has been any nonpayment on the five wells in question; (2) the details of what is being offset or not offset; (3) why the pleadings have to amended at this point given the breadth of the issues already teed up for trial and the remedies being requested (particularly the request for an accounting); (4) the status of the promised new chain of title for the O'Neil well; and (5) what discovery will be required if the proposed amended pleading is allowed.

5. Until the court can confer with the parties, all interim scheduling deadlines are suspended. If defendant elects not to proceed with a motion to amend, defendant should so advise the court and the court will conduct a telephonic conference to set new scheduling deadlines.

**IT IS SO ORDERED.**

Dated this 11th day of May, 2020

　　　　　　　　　　　　　　　　　　　　*/s/ Charles S. Miller, Jr.*
　　　　　　　　　　　　　　　　　　　　Charles S. Miller, Jr., Magistrate Judge
　　　　　　　　　　　　　　　　　　　　United States District Court